SHEPARDSON *v.* PERKINS & *a.*

When a stream of water has run, unused, in an artificial channel twenty years without objection, the owner of the lower end of the channel, building a mill on it, relying upon the stream for power, may have the right of a riparian owner of a watercourse as against the owner of the other end, who has caused the stream to flow in the channel twenty years.

A conveyance of land on which mills had been erected, which were supplied with power furnished by water conveyed to them in an artificial channel, carries with it, as appurtenant, the right to the use of the water running in such channel; and a subsequent conveyance, by the same grantor, of other mills on the same stream, is subject to the right appurtenant to the tract first conveyed.

CASE, for diverting water. The defendants, and those under whom they claim, constructed an artificial watercourse, or channel, extend-

ing from a point on Sugar river, in Claremont, to a point below on the same stream, through the premises now owned by the plaintiff, and erected mills, at the point where the artificial channel leaves the natural stream, about 1812, and the water was allowed to flow through that channel unobstructed, until 1871, when the defendants obstructed it, and prevented the water flowing through it.

In 1856, the title to the premises of the plaintiff and the defendants became united in one Ide, and so remained until 1866, when the plaintiff acquired his title.

The plaintiff's premises, from 1812 to 1844, were unimproved. The water flowed over them through the artificial channel, unused and uncontrolled by the plaintiff's grantors during that time.

In 1844, mills were built on the plaintiff's premises, at the outlet of the artificial channel, and the then owners controlled and used the water that came through it for mill purposes; and when less than half the water in the river came through it, and they desired to raise more, they went to the inlet and raised the defendants' gates and let the water flow in, claiming that they had the right to do so. They continued to do this until 1856, when they parted with their title.

The court ordered a verdict for the defendants, and the plaintiff excepted.

*Parker* and *Sargent & Chase*, for the plaintiff.

*Colby & Batchelder* and *Wait*, for the defendants.

STANLEY, J.   The verdict, having been ordered, must be set aside if there was any evidence upon which the jury might have found for the plaintiff. *Hazelton* v. *Batchelder*, 44 N. H. 40 ; *Dailey* v. *Blake*, 35 N. H. 29 ; *Johnson* v. *Railroad*, 46 N. H. 228.

The question then is, whether there was such evidence. The plaintiff claims that, as riparian owner, he can maintain this action. In 1812, the then owner of the defendants' premises constructed the artificial channel upon which the plaintiff's mills are situated, and drew about one half the water of the river therein, using, as it passed, so much of it as his works required. The water continued to run, practically in the same way, through the channel, over the defendants' premises and through the plaintiff's, into the river, without objection, until 1871, when the defendants diverted it. Of this diversion the plaintiff now complains.

Between 1812 and 1844 the flow was unobstructed and unused by the plaintiff or his grantors. At that time (1844), the water having run in the artificial channel more than thirty years, Duncklee, who then owned the plaintiff's premises, erected mills at the outlet and utilized the water for mill purposes, claiming and enjoying the right to one half the water of the river.

The general rule by which easements are acquired is reciprocal ; and

a proprietor at the head of a stream, who has changed the natural flow of the water, and has continued such change for more than twenty years, cannot afterwards be permitted to restore it to its natural channel when it will have the effect to destroy the mills of other proprietors below, which have been erected in reference to such change in the natural flow of the stream. *Belknap* v. *Trimble*, 3 Paige Ch. 577, 605. After suffering the water to flow through his land in a new channel, he cannot change it to the injury of mill-owners below, or riparian proprietors above, who have enjoyed the benefit of its flowing in such artificial channel. *Delaney* v. *Boston*, 2 Harr. (Del.) 489, 497.

If the land-owner, having changed the direction of the natural stream through his land, were to suffer others who are entitled to use the water to expend money in reference to such use, under a belief that the new channel was to be permanent, and this were known to him, he could not afterwards change its course so as to injure the party who had expended his money. In these and like cases, whenever one who owns a watercourse in which another is interested, or by the use of which another is affected, does any act, or suffers any act to be done, affecting the rights of other proprietors, whereby a state of things is created which he cannot change without materially injuring another who has been led to act by what he himself had done or permitted, the court applies the doctrine of equitable estoppel. Washburn on Easements 315.

This is peculiarly a proper case for the application of that doctrine. The defendants and their grantors, by making the artificial channel, and allowing one half the water of the river to run therein from 1812 to 1844, have led the plaintiff and his grantors to believe that the diversion of the water from its natural channel was permanent, and on the strength of that belief they have erected mills which, by closing the artificial channel, will be worthless. Upon every principle of justice, they should not now be allowed to restore the stream to its natural channel, and thus destroy the plaintiff's property.

But there is another view which is fatal to this verdict. In 1856 the title to both the plaintiff's and the defendants' premises was united in Ide, and so continued until 1866. During all that time, the channel was open, and the plaintiff's mills were supplied thereby. Ide conveyed to the plaintiff's grantor, and subsequently to the defendants. When Ide conveyed the premises to the plaintiff's grantor, there was necessarily conveyed with and as appurtenant to them the right to the use of the water flowing in the artificial channel, without which the plaintiff's property for mill purposes would be of no value; and the defendants, taking their title subsequent to the plaintiffs, took it subject to the plaintiff's right to have the water flow as it was then flowing. The two tracts of land, one now owned by the plaintiff and the other by the defendants, were, when Ide conveyed to the plaintiff's grantor, so united, by a practical application of the water of the one for the benefit of the other, as to give a value and advantage to the plaintiff's estate, which is presumed to have entered into the consid-

eration which he received upon conveying it.   Washburn on Easements 34.

*Exceptions sustained.*

FOSTER, BINGHAM, and ALLEN, JJ., did not sit.