## VALE MILLS *v.* NASHUA.

A city is liable in case for the damage caused an individual land-owner
by discharging a public sewer upon his land and into his mill-pond,
where the right to do so has not been acquired in some way known
to the law.

CASE, for wrongfully maintaining a sewer discharging offensive
matter upon the plaintiffs' land, and into their mill-pond, polluting
the water, and rendering it unfit for use. Facts found by the
court. The plaintiffs are a corporation engaged in the manu-
facture of cotton goods, owning and operating two mills in Nashua,
located on Salmon brook. One of the plaintiffs' mills is situated
on Main street just out of the thickly settled part of the city; the
other is a short distance down the brook, having a dam and reser-
voir above it, with an area of about ten acres when the pond is
full. The sewer complained of empties into the lower mill-pond.
When the water in the pond is drawn off, the channel of the brook
above the lower mill is from six to fifteen feet in width. The
outlet of the defendants' sewer is on the north-west side of the
pond at or near the water line when the pond is full, and the
boundary of the plaintiffs' land at that point is the edge of the
pond. When the pond is drawn off, the distance from the outlet
of the sewer to the channel of the brook is three hundred feet or
upwards. The plaintiffs own the land on both sides of the brook
to the verge of the pond when full, and also land adjoining the
pond suitable for cultivation and for building lots.

In operating the mill, the pond is lowered from one to four feet
during the day, leaving a space when the pond is lowered four feet
of four to six rods in width between the outlet of the sewer and
the edge of the pond uncovered with water. The plaintiffs some-
times have occasion to draw off the water to repair the dam and
flume, and to remove the sediment which accumulates in the bot-
tom of the pond. At such times the discharges from the sewer
run across the plaintiffs' land to the channel of the brook, some-
times forming stagnant pools of offensive matter upon the land.

The sewer was first built by the city of Nashua in 1870, and at
that time its outlet was at the surface of the ground about one
hundred feet distant from the plaintiffs' mill-pond. Since then it
has been extended at different times, and it is now, with its con-
necting branches, about one and one fourth miles in length. As
the sewer was extended, and the discharge from it increased in
quantity and became offensive upon the surface of the ground, it
was extended in 1879 so as to discharge its contents at or within a
very few feet of the edge of the pond. Its outlet is now at the
surface of the ground.

By the construction of the sewer, the quantity of surface drain-
age from streets and grounds carried into the pond has been

largely increased, and, in addition to the surface drainage, the sewer now receives and discharges the contents of about a dozen water-closets and forty-five sink-drains connecting with it. A license fee is charged by the city for the privilege of connecting with the sewer. The city is not a riparian owner upon the brook, and does not own the land adjoining the plaintiffs' pond, across which the sewer is laid. It has never acquired nor attempted to obtain the right to discharge the contents of the sewer into the plaintiffs' pond, or upon the plaintiffs' land, by license, purchase, or the exercise of the right of eminent domain.

As the sewer is now maintained, aside from the pollution of the water and the creation of offensive odors, the sewage matter discharged upon the plaintiffs' land depreciates its value, and would interfere with its use and enjoyment for purposes of cultivation; and, so far as it is a question of fact, the court finds that no reasonable necessity exists to justify the defendants in discharging the contents of the sewer upon the plaintiffs' land.

The question whether this action can be maintained upon the foregoing facts was reserved for the opinion of the court.

*G. B. French*, for the plaintiffs.

*W. W. Bailey*, for the defendants.

ALLEN, J. The defendants discharged their public sewer upon the land and into the mill-pond of the plaintiffs. The stream of water upon which the plaintiffs' dam and mill-pond are established is a brook, and the natural outlet of the surface drainage of that part of the defendant city where the sewer is. At the trial it was found that the defendants are not riparian owners upon the brook, and have never acquired nor attempted to acquire the right to discharge the contents of the sewer into the plaintiffs' pond, or upon their land, by license, purchase, prescription, or the exercise of the right of eminent domain, and that no reasonable necessity exists for discharging the sewer upon the plaintiffs' premises. These findings leave nothing upon which a defence to the action could be made. The invasion of the plaintiffs' premises by the defendants, without right acquired by contract, prescription, or statute proceedings, and without reasonable necessity, cannot be justified by anything shown to the court. Whether reasonable necessity, if it existed, would be a defence, it is not necessary to consider in this case. The sewer is not a natural water-course *(Bassett* v. *Salisbury M. Co.*, 43 N. H. 569), nor an artificial one established by prescription *(Shepardson* v. *Perkins*, 58 N. H. 354), but a new means of invading the plaintiffs' land, and using it as a cess-pool for the public benefit. *Gilman* v. *Laconia*, 55 N. H. 130 ; *Parker* v. *Nashua*, 59 N. H. 402.

*Judgment for the plaintiffs.*

CLARK, J., did not sit : the others concurred.